Russell Fred KELLEY, Appellant,

v.

E. Lloyd KELLEY and Ernest R. Kelley, Appellees.

No. 16009.

Court of Civil Appeals of Texas, San Antonio.

Dec. 13, 1978.

James G. Murry, San Antonio, Louis Scott Wilkerson, Sneed, Vine, Wilkerson, Selman & Perry, Austin, for appellant.

Emerson Banack, Jr., William T. Armstrong, San Antonio, for appellees.

## OPINION

KLINGEMAN, Justice.

This is an appeal from a judgment ordering appellant, and the defendant below, Russell Fred Kelley, to convey to each of the appellees, E. Lloyd Kelley and Ernest R. Kelley, an undivided one-sixth interest in a tract of approximately 48 acres of land in Medina County, Texas.

Appellees, plaintiffs in the trial court, are brothers of appellant. Upon the death of their mother in 1955, each of the three brothers received an undivided one-third interest in her one-half share of the tract of land in controversy, with the remaining

one-half interest belonging to their father, Elbert V. Kelley. After the death of his wife, Elbert V. Kelley remarried, was "not in the best of health," and had financial problems. Sometime in 1965 the father needed additional funds and desire to sell his one-half undivided interest in the land. Appellees were not interested in buying the land, but appellant evidenced some interest in the purchase if he could get a loan. Appellant was told that a loan could be obtained from a local savings and loan association but that the lending institution would make the loan only if the title to the property was in one person. Thereafter, in order to facilitate the loan for the purchase, appellees executed the deed in question to appellant.

Plaintiffs brought suit against defendant alleging that they agreed to execute the deed involved only for the purpose of obtaining the loan and with the agreement that their respective one-sixth interests would be reconveyed to them at a later date. Appellant denied any such agreement and asserted defenses including the statute of frauds and the three-year statute of limitations. Trial was to the court which after a hearing granted a judgment ordering defendant to convey to plaintiffs their respective one-sixth interests in the land in question. The trial court made extensive findings of fact and conclusions of law, the pertinent portions of which are set forth as follows:

*Findings of Fact:*

. . . . .

II. Prior to 1965, Plaintiffs' and Defendant's father remarried and moved to San Antonio, Texas. After such remarriage, Plaintiffs' father felt that he needed additional money and approached the Plaintiffs about buying his one-half (½) interest in the land. The Plaintiffs, although offering to assist their father, declined to purchase his interest in the property. Defendant, Russell Fred Kelley wanted to and did agree, to purchase his father's interest in the property.

. . . . .

IV. In 1965, Defendant Russell Fred Kelley, sought the assistance of his two (2) brothers in obtaining the remaining one-half (½) interst [sic] in the tract of land belonging to the Plaintiffs' and Defendant's father.

V. The assistance the Defendant required was for the Plaintiffs to transfer their legal title to the undivided two-sixths (⅔) interest in the land to Defendant in order that Defendant would thereby apparently have full legal title in the tract of land and thereby could acquire financing to purchase the father's interest.

VI. That it was understood between Plaintiffs and Defendant that the one-sixth (⅙) interest of each of the Plaintiffs would be reconveyed by Defendant to Plaintiffs at a later date. Without such an understanding and without the feeling of love and trust created by their confidential family relationship between the Plaintiffs and Defendant, the August 4, 1965 transfer of Plaintiffs' two-sixths (⅔) interest in the aforesaid tract would not have occurred.

. . . . .

VIII. That because of Plaintiffs' transferring their title to Defendant, Defendant was able to acquire financing and thereby acquire the one-half (½) interest in the land owned by Plaintiffs' and Defendant's father.

. . . . .

X. Plaintiffs never intended to make a gift of the two-sixths (⅔) interest in the land to Defendant, but always intended that it be reconveyed to Plaintiffs by Defendant, upon demand but no earlier than payment by Defendant of the original mortgage.

XI. In early 1974, Plaintiff E. Lloyd Kelley, sought to have the Plaintiffs' interest in the land reconveyed by Defendant to Plaintiffs. Defendant, however, refused to reconvey and this suit was brought on June 13, 1974.

*Conclusions of Law:*

I. That Plaintiffs are entitled to have two-sixths (⅔) interest reconveyed to

them because Defendant held the two-sixths interest in the land as a constructive trustee and he breached his obligation as trustee. (Authorities cited).

II. That Defendant could not avail himself of the Statute of Frauds defense against a claim for a constructive trust and that the admission into evidence of testimony in regard to a constructive trust did not violate the parol evidence rule (as amended by order of December 29, 1977).

III. That Defendant's Statute of Limitations defense fails because Plaintiffs were never put on notice that Defendant was repudiating the trust until late 1973 or early 1974. (Authorities cited). Also the three year Statute of Limitations plead by Defendant was not the applicable Statute of Limitations in that the Defendant did not possess equitable title to the two-sixths (⅔) interest in question. (Authority cited).

Appellant asserts eight points of error which are hereinafter discussed.

■ Appellant's first point of error is that the trial court erred in overruling his motion for summary judgment in the cause below. This point of error is without merit. Appellees did not file a motion for summary judgment and only appellant submitted such a motion.[1] Appellant's motion for summary judgment states that it is based upon the pleadings and exhibits attached thereto and the depositions taken prior to trial. There are no supporting affidavits in the record before us nor does such record contain any of the aforementioned depositions, except as alluded to in the statement of facts. Under the record before us, the trial court's order overruling the motion for summary judgment is correct.

A party who moves for summary judgment has the burden of establishing his right thereto as a matter of law and all doubts as to the existence of a material fact must be resolved against the moving party. *Campbell v. Avinger*, 505 S.W.2d 788 (Tex.

1974); *Farley v. Prudential Insurance Co.*, 480 S.W.2d 176 (Tex.1972); *Gibbs v. General Motors Corp.*, 450 S.W.2d 827 (Tex.1970). Appellant wholly failed to meet this burden.

It is obvious from appellant's first point of error and his brief in support thereof that such point is predicated upon his mistaken conclusion that the trial court's judgment is based solely upon a lack of consideration for the deed. Appellant argues from this premise that since the plaintiffs' pleadings were not sworn to, they had no standing before the court under the mandatory provisions of Rule 93(j), Texas Rules of Civil Procedure. Defendant misconstrues the ruling of the court. It is clear from the court's findings of fact and conclusions of law that this was not the sole basis for the judgment involved, if it was a basis at all. The trial court's findings demonstrate that the judgment is primarily based upon a constructive trust theory under evidence that the deed was given to Russell Fred Kelley only for the purpose of securing a loan, with the understanding and agreement that the property would be reconveyed to plaintiffs at a later date. Disregarding any failure of consideration, there are other sufficient grounds to support the judgment rendered herein. Moreover, the record contains no proof sufficient to have entitled appellant to a summary judgment in the trial court.

All of appellant's remaining points of error, except his eighth point (which pertains to the statute of limitations), will be considered together. By such points he asserts (a) that the deed to defendant was absolute on its face and contractual in nature, and defendant's statute of frauds defense was good; (b) that there is no evidence, or alternatively insufficient evidence, that the recitals in the deed were inserted by fraud, accident or mistake, which evidence is a necessary predicate; (c) that there is no evidence, or alternatively insufficient evidence, to support the trial court's finding

---

1. *See Ackermann v. Vordenbaum*, 403 S.W.2d 362 (Tex.1966), and *Tobin v. Garcia*, 159 Tex. 58, 316 S.W.2d 396 (1958).

that there was an agreement that the property involved would be reconveyed to plaintiffs by defendant at a later date, and that such finding is against the great weight and preponderance of the evidence, and (d) that the court's finding that plaintiffs never intended to make a gift of the property involved to defendant is against the great weight and preponderance of the evidence.

In support of his points of error, appellant relies heavily on that line of cases represented by *Jackson v. Hernandez*, 155 Tex. 249, 285 S.W.2d 184 (1955); and *Kahn v. Kahn*, 94 Tex. 114, 58 S.W. 825 (1900). While there is language in both cases which supports appellant's contention, these cases differ in several material respects from the case before us and we do not regard such cases as determinative of this appeal.

In *Kahn*, the Supreme Court held that where the appellant conveyed property to his wife by a deed which recited that the consideration was paid out of her separate funds and for her separate use and benefit, such recital showed a clear intention on his part to convey the land therein described to his wife as her separate property, and parol evidence was not admissible to show that such was not the intention, or to impose upon the grantee a parol trust in regard to such property.

*Jackson v. Hernandez* contains a good discussion of cases involving trusts but it is not directly in point. The court there held that where realty is conveyed by a deed which recites a contractual consideration but which does not stipulate, either expressly or by necessary implication, that the grantee named therein shall take the equitable as well as the legal title, the parol evidence rule does not preclude the establishment of a parol trust in favor of a third party and based upon prior agreement between grantee and such third party. The court further held that the statute of frauds does not prevent the engrafting of an express parol trust on a deed absolute in form.

The instant case falls within the category of the Supreme Court decisions of *Mills v. Gray*, 147 Tex. 33, 210 S.W.2d 985 (1948) and *Faville v. Robinson*, 111 Tex. 48, 227 S.W. 938 (1921). In *Faville*, the suit was an action where according to her petition, the plaintiff was induced to convey to her mother a certain interest in real estate upon the mother's oral representation and promise that at her death she would devise to plaintiff her entire interest in the property, which agreement was afterwards repudiated by the mother. Plaintiff sought to have the property impressed with a trust to the extent of the interest conveyed. The Supreme Court, in refusing the defendant's application for writ of error, stated:

> It is clearly and rightfully the rule in this State . . . that the title to property acquired under such circumstances is subject to a trust and that the trust may be established by parol. (Authority cited). Where a grant is made on the faith and because of a promise, a breach of the promise is necessarily a fraud, not to be tolerated in equity although the promise be only verbal.

*Mills v. Gray* contains an extensive discussion of the various types of trusts including "express trust," "implied trust," "resulting trust," and "constructive trust," and thoroughly sets forth the requirements for imposing a constructive trust on real estate. The Supreme Court noted that ordinarily a parol agreement between a grantor and a grantee that the property conveyed shall be held in trust for the grantor or reconveyed to the grantor or some other person, is an express trust which cannot be enforced where the statute of frauds requires a written instrument to create a trust.

The Court recognized that this rule has exceptions, and cited with approval the view of the Restatement of Trusts, Section 44, that:

> (1) Where the owner of an interest in land transfers it inter vivos to another in trust for the transferor, but no memorandum properly evidencing the intention to create a trust is signed, and the transferee refuses to perform the trust, the transferee holds the interest upon a constructive trust for the transferor, if
>
> (a) the transfer was procured by fraud, duress, undue influence or mistake, or

(b) the transferee at the time of the transfer was in a confidential relation to the transferor, . . . . .

147 Tex. at 38, 210 S.W.2d at 988. In *Mills* the Supreme Court found the following pertinent facts:

The respondents alleged, and attempted to prove, that the Broadway property was *conveyed* [by them] to Harry G. Mills only in accordance with the plan of settling the community affairs of Mr. and Mrs. Gray, and that it was understood by all concerned that the property would be held by him in trust for the benefit of his mother and the other children, and that after the divorce he would *reconvey* it to her, or if sold, he would divide the proceeds among the parties entitled thereto. *There were no allegations of fraud, accident or mistake* (emphasis added).

*Id.* at 36, 210 S.W.2d at 986–87. Under those facts, the Supreme Court concluded that plaintiffs could introduce parol evidence concerning the oral agreement regarding the reconveyance of the property.

■■■ The Supreme Court in *Mills* clarified the law applicable to such agreements to reconvey:

A constructive trust arises where a conveyance is induced on the agreement of a fiduciary or confidant to hold in trust for a reconveyance or other purpose, where the fiduciary or confidential relationship is one upon which the grantor justifiably can and does rely and where the agreement is breached, since the breach of the agreement is an abuse of the confidence, and it is not necessary to establish such a trust to show fraud or intent not to perform the agreement when it was made. The tendency of the courts is to construe the term "confidence" or "confidential relationship" liberally in favor of the confider and against the confidant, for the purpose of raising a constructive trust on a violation or betrayal thereof. A parent and child, grandparent and child, or brother and sister relationship is not intrinsically one of confidence, but under circumstances involves a confidence the abuse of which gives rise to a constructive trust in accordance with the terms of an agreement or promise of a grantee to hold in trust or to reconvey.

*Id.* at 39, 210 S.W.2d at 988, *citing* 54 Am. Jur. § 233. The Court further cited approvingly the following:

There are numerous cases to the effect that where at the time of the transfer the transferee was in a confidential relation to the transferor, and the transferor relied upon his oral promise to reconvey the land, he is chargeable as constructive trustee of the land for the transferor. In these cases it is held that the constructive trust will be imposed even though at the time when he acquired the property the transferee intended to perform his promise and was not therefore guilty of fraud in acquiring it; and even though the transferee did not take improper advantage of the confidential relation in procuring the transfer and was not therefore guilty of using undue influence. The abuse of the confidential relation in these cases consists merely in his failure to perform his promise.

*Id., citing* 1 Scott on Trusts § 44.2. In further support of its position, the Court held:

Fraud sufficient to raise a constructive trust from an oral promise made by the grantee to his grantor is not necessarily limited to actual fraud. As the earlier annotations indicate, the breach of a confidential relationship existing between the grantor and the grantee frequently is considered to be such constructive fraud as will give rise to a constructive trust.

*Id.* at 39–40, 210 S.W.2d at 988–89, *citing* Annot., 159 A.L.R. 997, 1007 (1945). The Court concluded that:

Under these principles, if the purported agreement and family arrangement had been established as true, a constructive trust would have arisen by reason of the confidential relation between the parties which would not fall within the prohibition of the Statute of Frauds or the Texas Trust Act. The testimony was therefore erroneously excluded by the trial court.

*Id.* at 40, 210 S.W.2d at 989. *See also Williams v. Williams,* 559 S.W.2d 888 (Tex. Civ.App.—Waco 1977, writ ref'd n. r. e.); *Gause v. Gause,* 430 S.W.2d 409 (Tex.Civ. App.—Austin 1968, no writ).

■ Although there is some conflicting evidence, we have concluded that the trial court's findings and conclusions (a) that the deed involved was executed under an agreement and understanding that at a later date the property interest conveyed would be reconveyed to plaintiffs; (b) that the deed was given pursuant to a family arrangement for the purpose of making a loan which was beneficial both to the father, Elbert V. Kelley, and to defendant; (c) that there was no intention on the part of plaintiffs to make a gift to defendant; (d) that the transferee at the time of the conveyance was in a confidential relationship to the transferors; and (e) that there was a constructive trust, are amply supported by the evidence. For the reasons enumerated, appellant's points of error 2, 3, 4, 5, 6 and 7 are overruled.

■ Appellant's eighth point asserts error in the trial court's conclusion of law that defendant's statute of limitations defense fails because plaintiffs were never put on notice that defendant was repudiating the trust until late 1973 or early 1974, and that the three-year statute of limitations was not applicable in that defendant did not possess equitable title to the two-sixths interest in question. Appellant urges that the evidence is insufficient to support that conclusion of law. We overrule such point of error.

The evidence shows that after the execution in 1965 of the deed involved both plaintiffs had keys to the property and had free access to the property, and that one of the plaintiffs had sheep on the land for a portion of the time. In 1973 or early 1974, the defendant agreed to allow a survey to be made on the property as to the appropriate ownership, that is, one-sixth to each plaintiff and four-sixths to defendant, and such a survey was made in which each plaintiff was to acquire a tract of 8.069 acres and defendant was to receive a tract of 32.276

acres, which tract included the old family home. At all pertinent times, defendant's actions were consistent with his promise to reconvey the property at a later date. It was not until late 1973 or early 1974 that it became obvious to plaintiffs that defendant did not intend to carry out his promise to reconvey the property. The suit was then timely filed.

■ The trial court's ruling on limitations was correct on two grounds. First, the statute of limitations in a case involving a constructive trust does not begin to run until the beneficiary knew or should have known that he had a cause of action. *See Andretta v. West,* 415 S.W.2d 638 (Tex. 1967); *Gause v. Gause,* 430 S.W.2d 409 (Tex. Civ.App.—Austin 1968, no writ). *Gause* involved a suit by a son and his wife seeking to impress a constructive trust on property conveyed by them to his father on the oral representation of the parents that the surviving parent at death would devise the property to the son and his wife. The suit was brought in 1967. In overruling the plea of limitations, the trial court concluded that the mother's intention not to keep the promise that had induced the conveyance in 1949 was not discovered by the son and wife until sometime in 1966.

■ The second basis on which the trial court's ruling on limitations may be sustained is that because of the cotenancy defendant's use of the property was not adverse to that of the plaintiffs. *See Condra v. Grogan Mfg. Co.,* 149 Tex. 380, 233 S.W.2d 565 (1950); *Williams v. Williams,* 559 S.W.2d 888 (Tex.Civ.App.—Waco 1977, writ ref'd n. r. e.); *Morton v. Morton,* 286 S.W.2d 702 (Tex.Civ.App.—Texarkana 1955, no writ); *Hitchcock v. Cassel,* 275 S.W.2d 205 (Tex.Civ.App.—Austin 1955, writ ref'd n. r. e.); 15 Tex.Jur.2d *Cotenancy* §§ 24–25 (1960). In *Condra,* the court stated:

[P]ossession of a cotenant will be presumed to be in his right as cotenant and . . . acts relied upon to establish an ouster of his cotenants and to start the running of limitation against them must be of such unequivocal nature and so

distinctly hostile to their rights that the intention to disseize is clear and unmistakable.

149 Tex. at 387, 233 S.W.2d at 569. Appellant's eighth point of error is therefore overruled.

The judgment of the trial court is affirmed.